IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,    )   CR. NO. 02-00341-03 HG
                             )   CIV. NO. 07-00597 HG-LEK
                Plaintiff,   )
                             )
          vs.                )
                             )
ROBERT R. MALDONADO, JR.,    )
                             )
                Defendant.   )
                             )
_____)


**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO VACATE SENTENCE UNDER 28 U.S.C. § 2255**


EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii

THOMAS MUEHLECK 3591
Assistant U.S. Attorney
Room 6-100, Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850

Attorneys for Plaintiff-Appellee
United States of America

Table of Contents

Page(s)

Table of Authorities . . . . . . . . . . . . . . . . . . . i-ii

I.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . 1

II.   DEFENDANT'S PETITION IS UNTIMELY . . . . . . . . . . 5

III.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM . . . . . . . 6

IV.   DENIAL OF DUE PROCESS CLAIM  . . . . . . . . . . . . 11

V.    CLAIM REGARDING SENTENCING GUIDELINES
      AMENDMENT #484 . . . . . . . . . . . . . . . . . . . 16

VI.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . 17

## Table of Authorities

**Cases**                                                                 Page(s)

Almendarez-Torres v. United States,
        523 U.S. 224 (1998) . . . . . . . . . . . . . . . . 13

Apprendi v. New Jersey,
        530 U.S. 466 (2000) . . . . . . . . . . . . . . . . 13

Baumann v. United States,
        692 F.2d 565 (9th Cir. 1982) . . . . . . . . . . . . 9

Blakely v. Washington,
        __U.S. __, 124 S.Ct. 2531 L.Ed.2d 403 (2004)   . . . 11, 13

Clay v. United States,
        537 U.S. 522 n.42 (2003) . . . . . . . . . . . . . . 6

Michel v. Louisiana,
        350 U.S. 91 (1955) . . . . . . . . . . . . . . . . . 7

Pennsylvania v. Finley,
        481 U.S. 551 (1987) . . . . . . . . . . . . . . . . 10

Strickland v. Washington,
        466 U.S. 668 (1984) . . . . . . . . . . . . . . . . 6, 7

United States v. Abarca,
        985 F.2d 1012 (9th Cir. 1993) . . . . . . . . . . . 9

United States v. Anglin,
        215 F.3d 1064 (9th Cir. 2000) . . . . . . . . . . . 9

United States v. Booker,
        543 U.S. 220 (2005) . . . . . . . . . . . . . . . . 9

United States v. Cardenas,
        405 F.3d 1046 (9th Cir. 2005) . . . . . . . . . . . 9

United States v. Donn,
        661 F.2d 820 (9th Cir. 1981) . . . . . . . . . . . 10

United States v. Flores-Sanchez,
        477 F.3d 1089 (9th Cir. 2007) . . . . . . . . . . . 14

United States v. Harrington,
        410 F.3d 598 (9th Cir. 2005) . . . . . . . . . . . 10

i

Cases                                                              Page(s)

United States v. Johnson,
        67 F.3d 200 (9th Cir. 1995) . . . . . . . . . . . . . . . 9

United States v. Kaczynski,
        239 F.3d 1108 (9th Cir. 2001) . . . . . . . . . . . . . 12

United States v. Nguyen,
        235 F.3d 896 (9th Cir. 2000) . . . . . . . . . . . . . . 9

United States v. Nunez,
        223 F.3d 956-59 (9th Cir. 2000) . . . . . . . . . . . . 9

United States v. Quintana-Quintana,
        383 F.3d 1052 (9th Cir. 2004) . . . . . . . . . . . . . 13

United States v. Vences,
        169 F.3d 611 (9th Cir. 1999) . . . . . . . . . . . . . . 9

Rules and Statutes

21 U.S.C. § 841(b)(1)(A)(viii) . . . . . . . . . . . . . . . 11

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . 5, 12

28 U.S.C. § 2255(1) . . . . . . . . . . . . . . . . . . . . . 6

Miscellaneous

Pub. L. No. 104-132, 110 Stat. 1214 . . . . . . . . . . . . . 5

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION
TO VACATE SENTENCE UNDER 28 U.S.C. § 2255**

I.  <u>STATEMENT OF FACTS</u>

During investigation of Michael and Robin Minton, the
Drug Enforcement Administration (DEA) determined that the
defendant and Ryan K. Sonognini were involved in the distribution
of cocaine with the Mintons.  Presentence Report, paragraph 15.[1]
On June 19, 2002, Michael Minton was detained at the Honolulu
airport en route to California via Hawaiian Airlines.  PSR,
paragraph 15.

A narcotics detection dog alerted on one of two metal
suitcases Minton was carrying.  PSR, paragraph 15.  A federal
search warrant to open the two suitcases was obtained and
$157,442 was found in one suitcase and $75,365 was discovered in
the second suitcase.  PSR, paragraphs 15 and 16.  Minton was not
arrested and subsequently travelled to California with Robin
Minton on June 26, 2002.  PSR, paragraph 16.  On July 22, 2002, a
federal search warrant was executed on the Mintons' residence in
Hauula, Hawaii.  PSR, paragraphs 16 and 17.  Agents seized small
amounts of methamphetamine, heroin, cocaine and marijuana.  PSR,
paragraph 17.

Agents also recovered documentation and keys for three
storage lockers at Public Storage Warehouse in Waipahu that

---

[1] The Presentence Report, hereinafter "PSR", is filed
separately underseal.

indicated Ryan Sonognini, Trevor Minton and Robin Minton had rented storage lockers.  PSR, paragraph 19.

A search warrant was obtained for the three storage lockers at Public Storage Warehouse in Wahipahu.  From the storage lockers, agents seized 3,988 grams of cocaine, twenty-one firearms and a silencer.  Six of the firearms were found to be machine guns.  PSR, paragraphs 21 and 22.

On July 25, 2002, Honolulu Police officers were called to the Hawaii Prince Hotel in Waikiki after a hotel maid reported discovering drugs and paraphernalia in a room that Robin Minton was trying to enter.  PSR, paragraph 24.  Honolulu Police officers recovered a Foodsaver bag containing 873 grams of cocaine and 16 Ziploc bags containing 423 grams, net weight, of methamphetamine of 53 percent purity.  The officers also found a loaded, Bryco .380 caliber semiautomatic pistol in a black case in the room.  PRS, paragraph 24.

Ryan Sonognini was arrested on July 26, 2002, and told the DEA that Trevor Minton had asked him to rent a storage locker for his father Michael Minton.  PSR, paragraph 26.  Sonognini told the DEA that he and Trevor Minton met with Robin Minton and the defendant at Zippy's restaurant in Kapahulu on July 24, 2002 at 4:00 a.m.  PSR, paragraph 27.  Sonognini told DEA that the defendant had said that the police would press him and Trevor Minton for information but "they should not worry because they

2

wanted the big fish and not you guys because you are too young."
PSR, paragraph 27.  Sonognini told the DEA that he knew the
defendant was an associate drug dealer of Michael Minton.  PSR,
paragraph 27.  At the meeting at Zippy's, Sonognini observed the
defendant give Robin Minton a large quantity of money.

Sonognini had a friend obtain the Hawaii Prince Hotel
room on July 24 at the request of Robin Minton.  PSR, paragraph
28.  Sonognini told the DEA that Robin Minton and the defendant
had gone to the Hawaii Prince Hotel and had been provided with
the keys to Robin Minton's room.  PSR, paragraph 28.
Approximately two hours later, Sonognini learned from Robin
Minton that she had been expelled from the hotel, that she had
left her "personals" meaning drugs in the room and that the
defendant left his backpack in the room.  PSR, paragraph 28.

On August 8, 2002, the grand jury for the District of
Hawaii returned an Indictment charging the defendant, Michael and
Robin Minton and Ryan Sonognini with one count of conspiring to
distribute more than 50 grams of methamphetamine and cocaine and
charging the defendant and Robin Minton with possessing with
intent to distribute more than 50 grams of methamphetamine.  On
January 8, 2003, the defendant was arrested in Henderson, Nevada,
by the Federal Bureau of Investigation.  PSR, paragraph 32.

On March 19, 2003, the grand jury for the District of
Hawaii returned a First Superseding Indictment charging the

3

defendant and the Mintons and Sonognini with one count of conspiring to distribute more than 50 grams of methamphetamine and more than 500 grams of cocaine (Count 1). The defendant was also charged with one count of possessing more than 50 grams of methamphetamine with intent to distribute (Count 3) and one count of possessing more than 500 grams of cocaine with intent to distribute (Count 4). Exhibit 1.

On May 7, 2004, the defendant appeared before United States District Judge Helen Gillmor and pursuant to a plea agreement pled guilty to Count 1 of the First Superseding Indictment in return for dismissal of Counts 3 and 4 at sentencing. Exhibit 2.

On August 26, 2004, the United States filed a motion for downward departure under Section 5K1.1 of the United States Sentencing Guidelines for substantial assistance to authorities. On September 16, 2004, the defendant appeared for sentencing. The Court granted the United States' motion for downward departure for substantial assistance. Defendant Maldonado was sentenced to 200 months imprisonment and a five year term of supervised release. Exhibit 3. Judgment was entered on September 27, 2004, and the defendant timely filed a notice of appeal on October 5, 2004.

On January 24, 2005, the defendant filed his opening brief with the United States Court of Appeals for the Ninth

Circuit.  Defendant claimed he had received ineffective assistance of counsel because his trial attorney had "allowed his appeal rights to be waived for purposes of appeal which meant that the sentencing judge had free reign (sic) to sentence." Defendant also claimed in his appeal that "the District Court abused its discretion in sentencing Maldonado to 200 months of imprisonment while sentencing co-defendants to a fraction of that with significant more culpability in the first superseding indictment."[2]

On December 10, 2007, the defendant filed the instant petition under 28 U.S.C. § 2255 to correct an illegal sentence. Exhibit 4.  On January 10, 2008, the defendant filed an amended petition.  Exhibit 5.  The defendant requests an evidentiary hearing and appointment of counsel.

II.  DEFENDANT'S PETITION IS UNTIMELY

Maldonado's petition is untimely.  Under the landmark Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") a petition under 28 U.S.C. § 2255 is subject to a one year period of limitation.  Pub. L. No. 104-132, 110 Stat. 1214.  That period

---

[2] On January 13, 2006, in an unpublished Memorandum decision, the Court of Appeals for the Ninth Circuit declined to review defendant's claim of ineffective assistance of counsel and dismissed his other claim in light of the valid appeal waiver. United States v. Maldonado, No. 04-10559 Memorandum (Jan. 9, 2006).  The defendant filed a petition for certiorari to the Supreme Court on April 17, 2006.  Certiorari was denied on May 15, 2006.  No. 05-10297.

begins to run on the date on which the judgment of conviction becomes final.  28 U.S.C. § 2255(1).  The defendant's conviction became final on May 15, 2006, the date the Supreme Court denied the writ of certiorari.  Clay v. United States, 537 U.S. 522, 529 n.42 (2003).  Therefore, defendant's petition which was filed on December 10, 2007 is untimely.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

The defendant makes a vague claim of his counsel's ineffectiveness because of his failure to address "all Sentencing Guideline Misapplications" on direct appeal.

To succeed on a claim of ineffective assistance of counsel, defendant must demonstrate that (1) in light of all the circumstances, his counsel's performance was outside the "wide range of professionally competent assistance," by identifying specific material errors or omissions; and (2) his defense was so prejudiced by his counsel's errors that there is a reasonable probability that, but for his counsel's deficient representation, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687, 690 (1984).  To successfully demonstrate ineffective assistance of counsel, defendant must satisfy both prongs of the test.  Id. at 697.

Defendant must also overcome the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

6

judgment." See id. at 690; see also Michel v. Louisiana, 350
U.S. 91, 101 (1955) (defendant must overcome presumption of
effectiveness, including the possibility that, under the
circumstances, the challenged action might be considered sound
trial strategy). Judicial scrutiny of counsel's performance must
be highly deferential and must take into account the facts of the
particular case, viewed at the time of counsel's conduct. See
Strickland, 466 U.S. at 689-90.

    The United States submits that appellate counsel's
failure to address on direct appeal "all sentencing guideline
misapplications" did not amount to ineffective assistance of
counsel as the defendant had as part of his plea agreement
Waived his rights to challenge his sentence.

    At his change of plea hearing, the district court read
the count of the First Superseding Indictment to the defendant.
See Exhibit 6. Tr. 5/7/04 pages 11-13. The Indictment charged
the defendant with conspiring to distribute and possess with
intent to distribute in excess of 500 grams of cocaine and in
excess of 50 grams of methamphetamine.

    The defendant said he understood the charge. The
defendant said that he understood that he was facing a mandatory
minimum term of imprisonment of ten years. Exhibit 6. Tr.
5/7/04 page 13. The defendant said that he understood that he
could receive a sentence of up to life imprisonment. Exhibit 6.

7

Tr. 5/7/04 page 13.  The defendant told the district court that he had read the plea agreement, agreed with its terms and had discussed the agreement with his counsel.  Exhibit 6.  Tr. 5/7/04, page 18.

Paragraph 11 of the plea agreement provided:

"Defendant knowingly waives the right to appeal . . . Any sentence within the maximum provided in the statute(s) of conviction or the manner in which  that sentence was determined on any of the grounds whatever, in exchange for the concessions made by the prosecution in this plea agreement."

Exhibit 2 page 5.

The defendant agreed in the plea agreement to waive his right to challenge his sentence or the manner in which it was determined unless the Court departed upward from the guideline range except the defendant retained the right to challenge the sentence based on ineffective assistance of counsel.  Exhibit 2, pages 5-6.

During the change of plea, the United States advised the Court that, in accordance with the plea agreement, the defendant waived his right to appeal the sentence.  The Court asked the defendant if he had read the plea agreement and if he agreed with its terms and the defendant said, "Yes."  Exhibit 6. Tr. 5/7/04, page 18.

The defendant specifically acknowledged the waiver of his right to appeal his sentence.  This type of appellate waiver

has been upheld numerous times.  See, e.g., United States v. Nunez, 223 F.3d 956-59 (9th Cir. 2000); United States v. Anglin, 215 F.3d 1064, 1066 (9th Cir. 2000); United States v. Vences, 169 F.3d 611, 614 (9th Cir. 1999); United States v. Johnson, 67 F.3d 200, 202 (9th Cir. 1995); United States v. Abarca, 985 F.2d 1012, 1013 (9th Cir. 1993).

An appeal waiver is valid when it is entered into knowingly and voluntarily.  United States v. Nguyen, 235 F.3d 896, 900 (9th Cir. 2000).

The changes in sentencing law, imposed by United States v. Booker, 543 U.S. 220 (2005) did not render waivers of appeal involuntarily and unknowing.  United States v. Cardenas, 405 F.3d 1046, 1048 (9th Cir. 2005).  The Court explained to the defendant that at trial the government had to prove beyond a reasonable doubt the quantity of drugs involved and that such finding would affect the maximum sentence he might receive.  The defendant agreed that he was willing to waive having the question of drug type and drug quantity presented to a jury.  Exhibit 6.  Tr. 5/7/04, pages 6,  16, 17-18, 26.

Defendant fails to identify the "Sentencing Guideline Misapplications" that he alleges his counsel failed to raise on direct appeal.  To warrant an evidentiary hearing, a petition must make specific factual allegations which, if true, would entitle him to relief.  Baumann v. United States, 692 F.2d 565,

9

571 (9th Cir. 1982).  If "the record conclusively shows
[petitioner's] motion to be without merit," then no hearing is
necessary.  United States v. Donn, 661 F.2d 820, 825 (9th Cir.
1981).  Only when the petitioner has "made reasonably plausible
factual allegations that state a claim on which relief could be
granted" must the court hold a hearing.  Id. at 825.  There is no
Sixth Amendment right to appointment of counsel, in proceedings
collaterally attacking a defendant's conviction, judgment and
sentence.  See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987),
(There is no right to counsel for a collateral attack on a
conviction.")  Defendant's claim of ineffectiveness of counsel
does not entitle him to an evidentiary hearing or appointment of
counsel.  United States v. Harrington, 410 F.3d 598, 600 (9th
Cir. 2005).

        Moreover, defendant has failed to show any reasonable
probability that, if his appellate counsel had raised certain
"Sentencing Guideline Misapplications" on appeal, the result of
the proceedings would have been different.  Defendant fails to
explain how the result would have been different in light of the
enforceable appellate waiver contained in his plea agreement.
Maldonado has not established that his Sixth Amendment right to
counsel was violated by counsel's alleged failure to challenge
"Sentencing Guidelines Misapplications."

10

IV.   DENIAL OF DUE PROCESS CLAIM

The defendant claims that he was denied due process
when "the drug amount pled too (sic) by defendant
unconstitutionally was illegally enhanced under 21 U.S.C. §
841(b)(1)(A)(viii) after the court accepted Maldonado's guilty
plea."

The defendant told the Court he had received and read
the First Superseding Indictment, reviewed it with his counsel.
Exhibit 6.  Tr. 5/7/04, page 11.  The Court read Count One of the
First Superseding Indictment to the defendant and the defendant
said he understood the Count.  Exhibit 6.  Tr. 5/7/04, pages 11-
13.  During the sentencing hearing the defendant did not
challenge the computation of the amount of methamphetamine, the
base offense level or the indictment.  The defendant advised the
Court he wished to waive any issues under Blakely v. Washington,
__U.S. __, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and proceed to
sentencing.  Exhibit 6.  Tr. 9/16/04, pages 3-6.

The presentence report found that the defendant was
responsible for the methamphetamine and cocaine that Honolulu
police discovered in the hotel room that he shared with co-
defendant Robin Minton.  PSR paragraph 24, 27, 28.  Found in room
611 at the Hawaii Prince Hotel were 873 grams of cocaine and 423
grams net weight of methamphetamine at 53 percent purity, or
224.19 grams net weight of methamphetamine (actual).  Exhibit 7.

11

During the change of plea hearing the defendant told the Court he agreed with the DEA lab report and gave up his right to have the amounts of drugs determined by a jury.  Exhibit 6.  Tr. 5/7/04, pages 25-26.  The PSR calculated the base offense level for the days at level 34.  PSR paragraph 40, 41, 42 and 44.  Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plead.  United States v. Kaczynski, 239 F.3d 1108, 1115 (9th Cir. 2001).

At sentencing, the defendant did not object to the Base Offense Level calculation per paragraph 11 of the plea agreement. Under the plea agreement, the defendant waived his right to challenge his sentence or the manner in which it was determined including a motion under 28 U.S.C. § 2255 except based on a claim of ineffective assistance of counsel and if the Court departed upward from the guideline range determined by the Court to be applicable.  The Court's determination of the Base Offense Level was not an upward departure so as to allow the defendant to challenge his sentence.  Departures under the United States Sentencing Commission Guidelines Manual are determined through the analysis of the sections in Part K of Chapter Five.  The Base Offense Level was calculated through applications of the sections in Part D - Offenses Involving Drugs in Calculating the Offense Conduct of Chapter Two.  The calculation was based on the DEA

laboratory report which was accepted by the defendant during the change of plea hearing. The defendant's challenge to the amount of drugs attributable to him and used to calculate his Base Offense Level is barred by his voluntary relinquishment of his right to collaterally attack his sentence and his express acceptance of the DEA lab analysis.

Defendant also claims he was denied due process when "the Court allowed the presentence report to upward depart defendant's sentence . . . by using prior convictions not pled too(sic)." Apparently, the defendant is arguing that under Apprendi v. New Jersey, 530 U.S. 466 (2000), the Court could not base defendant's sentence upon prior convictions that were not presented to a jury and proven beyond a reasonable doubt.[3] In Blakely v. Washington, __U.S.__, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court explicitly preserved its prior holding in Apprendi v. New Jersey and Almendarez-Torres v. United States, 523 U.S. 224 (1998) that a sentencing enhancement based on a defendant's prior conviction does not have to be presented to a jury. Blakely, 124 S.Ct. at 2348. See also, United States v. Quintana-Quintana, 383 F.3d 1052, 1053 (9th Cir. 2004) and

---

[3] In fact the Supreme Court held in Apprendi that prior conviction need not be found by a jury beyond a reasonable doubt before a sentencing court could consider them ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") 530 U.S. at 490.

<u>United States v. Flores-Sanchez</u>, 477 F.3d 1089, 1093 (9th Cir. 2007).

This Court did not utilize the presentence report to depart upward from the sentencing guidelines range in accordance with Part K of Chapter 5. The Court did utilize the presentence report to calculate the defendant's Criminal History Category under Chapter Four and in doing so did examine the defendant's criminal record. The Court found that the defendant was a Criminal History Category VI with an offense level 34 which yielded a guidelines range of 262 to 327 months. Tr. 9/16/04 pages 6-7.[4] The United States filed a motion for downward departure under Section 5K1.1 of the sentencing guidelines for substantial assistance. The Court granted the United States' motion for downward departure and departed downward to level 31. The defendant's range at level 31 was 188 to 235 months and the Court sentenced the defendant to 200 months. Tr. 9/16/04 pages 17-18. The Court did not depart upward, it departed <u>downward</u>. Since the Court did not depart upward, the defendant's appeal waiver bars him from collaterally attacking his sentence.

Defendant further claims that he was denied due process when he was not put on notice of the actual sentence he would

---

[4] Tr. 9/16/04 is a sealed transcript and is filed separately under seal.

receive by pleading guilty.  The defendant claimed "he was sandbagged (illegally enhanced) by the government."

During the change of plea hearing, the Court advised the defendant that the defendant would have to wait until a presentence report was completed before the Court would determine what guideline range the defendant would be sentenced within. Exhibit 6.  Tr. 5/7/04 pages 9-10.  The defendant said he understood that and had discussed the sentencing guidelines with his counsel.  Exhibit 6.  Tr. 5/7/04 pages 9-10.  When asked if he understood that the Court could in some circumstances impose a sentence more severe and outside the guidelines, the defendant stated that he understood.  Exhibit 6.  Tr. 5/7/04 page 10.

The defendant was advised by the Court that the maximum sentence he faced was up to life imprisonment with a mandatory minimum of ten years imprisonment.  The defendant said he understood the maximum sentence.  Exhibit 6.  Tr. 5/7/04 page 13. The defendant said that he understood that based on his guilty plea, the Court could impose the maximum term.  Exhibit 6.  Tr. 5/7/04 page 19.  The Court asked the defendant if anyone had made any prediction or promise as to what his sentence would be and the defendant responded "No."  Exhibit 6.  Tr. 5/7/04 page 19.

The sentence imposed by the Court - 200 months - was well within the guideline range and was less than a life sentence.  The defendant's statements under oath that he

15

understood he could receive a life sentence for his guilty plea show that his allegation of being "sandbagged by the government" is without merit. As mentioned previously, since the Court did not depart above the guideline range in sentencing the defendant, this claim should not be considered by the Court.

V.    CLAIM REGARDING SENTENCING GUIDELINES AMENDMENT #484

           The defendant apparently alleges in Claim Three that Sentencing Guideline Amendment #484 was not followed by the Court in determining the defendant's sentence. See Exhibit 8. Amendment #484. In fact, paragraphs 40 and 41 of the PSR reflect that the calculation of the base offense level did involve the computation of actual methamphetamine, that is the weight of the controlled substance itself, not the mixture or substance containing the methamphetamine. As noted above the defendant agreed with the analysis performed by the DEA laboratory. Additionally, as argued above, since the Court did not depart above the guideline range, the defendant, per his appellate waiver in the plea agreement, is barred from collaterally attacking his sentence on this basis.

//

//

//

//

16

VI.  <u>CONCLUSION</u>

For the reasons argued above and based on the entire record, the defendant's petition to vacate, set aside or correct sentence should be denied.

DATED: February 8, 2008, at Honolulu, Hawaii

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By <u>/s/ Thomas Muehleck</u>
   THOMAS MUEHLECK
   Assistant U.S. Attorney

17

## CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served by First Class Mail:

USP VICTORVILLE                         February 8, 2008
Attn: Mr. Robert R. Maldonado, Jr.
09-22-2017
P.O. Box 5500
Adelanto, CA 923301

 Pro se


                    /s/ Rowena Kang