1

1          IN THE UNITED STATES DISTRICT COURT FOR THE

2                        DISTRICT OF HAWAII

3    UNITED STATES OF AMERICA,    )    CRIMINAL NO. 02-00341HG
                                  )
4              Plaintiff,         )    Honolulu, Hawaii
                                  )    May 7, 2004
5         vs.                     )    3:39 p.m.
                                  )
6    (03) ROBERT R. MALDONADO, JR.,)   MOTION TO WITHDRAW NOT
                                  )     GUILTY PLEA AND TO PLEAD
7              Defendant.         )     ANEW AS TO DEFENDANT (03)
     _____)     ROBERT R. MALDONADO, JR.

8

9                  TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE HELEN GILLMOR,
                  UNITED STATES DISTRICT JUDGE

10

11   APPEARANCES:

12   For the Government:        THOMAS MUEHLECK, Esq.
                                Assistant U.S. Attorney
13                              District of Hawaii
                                Room 6100 - PJKK Federal Bldg.
14                              300 Ala Moana Blvd.
                                Honolulu, Hawaii 96813

15

16   For the Defendant:        RUSTAM BARBEE, Esq.
                                Century Square
17                              1188 Bishop Street, Suite 1310
                                Honolulu, Hawaii 96813

18

19

20   Official Court Reporter:   Cynthia Tando Fazio, RMR, CRR
                                United States District Court
21                              P.O. Box 50131
                                Honolulu, Hawaii  96850

22

23

24

25   Proceedings recorded by machine shorthand, transcript produced
     with computer-aided transcription (CAT).

EXHIBIT 6

1  FRIDAY, MAY 7, 2004                          3:39 P.M.

2          THE CLERK:  Criminal Number 02-00341HG, United States

3  of America versus Defendant 03, Robert R. Maldonado, Jr.

4          This hearing has been called for Motion to Withdraw

5  Not Guilty Plea and to Plead Anew.

6          Counsel, your appearances for the record.

7          MR. MUEHLECK:  Tom Muehleck for the United States.

8  Good afternoon again, Your Honor.

9          THE COURT:  Good afternoon.

10         MR. BARBEE:  Good afternoon, Your Honor.  Rustam

11  Barbee appearing with Mr. Maldonado.  He's present in the

12  courtroom.

13         THE COURT:  Good afternoon, Mr. Barbee.

14         Mr. Maldonado, I am informed that you wish to enter a

15  plea of guilty at this time; is that correct?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Before I accept your guilty plea there

18  are a number of questions that I want to ask you to make

19  certain that this is a valid and voluntary plea.  If you don't

20  understand my questions or if at any time you wish to consult

21  with Mr. Barbee, let me know.  It's important that you

22  understand each question before you answer.

23         Ms. Sai, would you swear the defendant, please?

24         (The defendant was sworn to answer truthfully.)

25         THE COURT:  Now, Mr. Maldonado, do you understand you

1    are now under oath and if you answer any of my questions

2    falsely, your answers may later be used against you in another

3    prosecution for perjury or for making a false statement?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  What's your full legal name?

6              THE DEFENDANT:  Robert Maldonado, Jr.

7              THE COURT:  How old are you?

8              THE DEFENDANT:  47.

9              THE COURT:  And how far did you go in school?

10             THE DEFENDANT:  12th grade.  I graduated, ma'am.

11             THE COURT:  And where did you graduate from high

12   school?

13             THE DEFENDANT:  Kailua.

14             THE COURT:  And what's the last job that you had?

15             THE DEFENDANT:  I was working as a -- part-time at

16   Fresh Start, drug program in Waipahu.

17             THE COURT:  What were you doing there?

18             THE DEFENDANT:  I graduated from that program itself

19   and they took me on as part-time staff briefly.

20             THE COURT:  When was that?

21             THE DEFENDANT:  In 2000 -- 2000.

22             THE COURT:  Have you ever been treated for any mental

23   illness?

24             THE DEFENDANT:  No, ma'am.

25             THE COURT:  Have you been treated for addiction to

1     alcohol?

2                THE DEFENDANT:  No, ma'am.

3                THE COURT:  But you have been treated for narcotic

4     drugs.  You want to tell me about that?

5                THE DEFENDANT:  Well, I was dependent on -- on drugs

6     and I got incarcerated.  When I got incarcerated, to handle my

7     addiction, I took certain classes to address that issues.  And

8     then when I got out that was a stipulation of my parole.

9                THE COURT:  And when was it that you went through

10    that treatment?  We're talking about the Fresh Start program,

11    correct?

12               THE DEFENDANT:  Yeah, that was in the year 2000,

13    ma'am.

14               THE COURT:  Have you taken any drugs or medicines or

15    pills or drunk any alcoholic beverage in the past 24 hours?

16               THE DEFENDANT:  No, ma'am.

17               THE COURT:  Can you tell me briefly what's happening

18    here today?

19               THE DEFENDANT:  I am -- I came here to change my plea

20    to do with my -- my case.

21               THE COURT:  So is it your intention to change from a

22    not guilty plea to a guilty plea?

23               THE DEFENDANT:  Yes, ma'am.

24               THE COURT:  Court finds the defendant is competent to

25    understand the proceedings and to enter a knowing plea.

1          Have you had enough time to talk about your case with

2    Mr. Barbee?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Are you satisfied with his representation

5    of you?

6          THE DEFENDANT:  Very much so.

7          THE COURT:  Do you understand that under the

8    Constitution and laws of the United States, you're entitled to

9    a trial by a jury on the charges contained in the first

10   superseding indictment?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand that under the

13   Constitution and laws of the United States, you're entitled to

14   a trial by a jury on the charges contained in the first

15   superseding indictment?  Or did I just say that?

16         THE DEFENDANT:  I think you did.

17         THE COURT:  I think I did.  It's very late in the

18   day.

19         MR. MUEHLECK:  It's been a long day, Your Honor.

20         THE COURT:  Very long day.

21         THE CLERK:  Long week.

22         THE COURT:  Long week, yes.

23         Okay.  We better move on.

24         Do you understand that at a trial you would be

25   presumed to be innocent and the government has the burden of

1  proving you guilty?

2          THE DEFENDANT:  Yes.  Yes, ma'am.

3          THE COURT:  And do you understand that the only way

4  that you can be found guilty is if the government through the

5  use of competent evidence proves you guilty beyond a

6  reasonable doubt?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Do you understand that the government

9  must prove beyond a reasonable doubt the quantity of drugs

10  involved and that that affects the maximum sentence you may

11  receive?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Are you willing to waive having the

14  government -- are you willing to waive having that question

15  presented to a jury as to the type of drug and the quantity of

16  drug?

17               (Counsel and client conferring.)

18          THE DEFENDANT:  Yes.  Yes, ma'am.

19          THE COURT:  Do you understand that you don't have to

20  prove that you are not guilty, but the government has to prove

21  you guilty?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Do you understand that you have the right

24  to be assisted by an attorney for your defense?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  Do you understand that you have the right

2     to see and hear all of the witnesses and have them questioned

3     by your attorney?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Do you understand you can object to

6     evidence offered by the government and that you can offer

7     evidence on your own behalf?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that you have the right

10    to testify if you chose to at your trial?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  Do you also understand that you have the

13    right not to testify and no inference or suggestion of guilt

14    can be drawn from the fact that you did not testify?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Okay.  Ms. Sai, do you think you could

17    turn my mike up because I can't get any more volume out of the

18    voice box and I think I'm losing my voice.

19         MR. MUEHLECK:  Fading, Your Honor.

20         THE COURT:  Yes, definitely.

21         Now, do you understand that by entering a plea of

22    guilty and if I accept your plea, there will be no trial?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  And do you understand that means you have

25    waived or given up your right to a trial as well as the other

1    rights associated with a trial that I've just described if you
2    plead guilty?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Do you understand the offense to which
5    you are pleading guilty is a felony offense and if your plea
6    is accepted and you are adjudged guilty of that offense, that
7    adjudication may deprive you of valuable civil rights, such as
8    the right to vote, the right to hold public office, the right
9    to serve on a jury and the right to any -- to possess any kind
10   of firearm?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Are you currently charged with or serving
13   a sentence for a violation of state law?

14             MR. BARBEE:  Your Honor, without getting into a lot
15   of detail, he is -- he does have a pending parole issue with
16   the State of Hawaii.  It's not sure whether or not they are
17   going to impose -- reimpose the parole after the disposition
18   of this case or if they're going to actually want him back in
19   the state system to -- for further incarceration.

20             THE COURT:  Okay.  Well, that is important and I see
21   that in your pretrial report, that there is an outstanding
22   issue.  And it's important because any sentence you receive
23   for the federal charge, it is possible it will not be served
24   at the same time as the sentence you may receive for the state
25   charge.  Do you understand that?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  By that I mean one sentence may run

3     consecutively or after the other sentence.  You understand

4     that?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  If you plead guilty, do you understand

7     you will have waived your right not to incriminate yourself

8     because I'm going to ask you questions about what you did in

9     order to satisfy myself that you are guilty as charged and

10    today you will have to talk about what you did?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  The court finds the defendant understands

13    he has a right to a trial by jury, the rules of substance and

14    procedure applicable to such a trial, and his plea will be a

15    waiver of his right to trial and he is willing to waive his

16    right to trial.

17         Now we're going to talk about the Sentencing

18    Commission Guidelines.  United States law establishes detailed

19    sentencing guidelines which specify sentences for people

20    convicted of federal crimes.  In most cases I must impose a

21    sentence within the guideline range.  Before I accept your

22    plea of guilty it's important that you understand certain

23    consequences of these guidelines.  Have you and Mr. Barbee

24    talked about how the Sentencing Commission Guidelines might

25    apply to your case?

1          THE DEFENDANT:  We have, ma'am.

2          THE COURT:  Do you understand that I'm not going to

3     be able to determine what guidelines will apply to your case

4     today?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  You understand that we have to wait until

7     after a presentence report has been completed and you and the

8     government have an opportunity to review it and object to

9     anything in it you don't agree with?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  Do you also understand that after it has

12    been determined what guidelines applies to a case, the judge

13    has the authority in some circumstances to impose a sentence

14    outside the guidelines, it might be more severe or less

15    severe; do you understand that?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Do you understand that under some

18    circumstances you or the government may have the right to

19    appeal a sentence I impose?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you also understand that parole has

22    been abolished in the federal system and if you are sent to

23    prison you will not be released early on parole?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  Do you understand if the sentence is

1  worse or more severe than you expected, you will still be

2  bound by your plea and you won't have a right to withdraw it?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  The court finds the defendant understands

5  the requirements of the sentencing guidelines and the plea of

6  guilty is made in accordance with his understanding.

7          Do you still wish to plead guilty?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Have you received a copy of the first

10  superseding indictment naming you?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  And have you read it?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And reviewed it with Mr. Barbee?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Now, the indictment entitled "first

17  superseding indictment" was filed on March 19th, 2003, and

18  Count 1 charges that from a date unknown but from at least

19  February 1, 2001 to on or about July 31st, 2002, in the

20  District of Hawaii and elsewhere, the defendants Michael

21  Minton, Robin Wester Minton, Robert R. Maldonado, Jr. and Ryan

22  Kawika Sono --

23          MR. MUEHLECK:  Sonognini, Your Honor.

24          THE COURT:  Sonognini did conspire together with each

25  other and with other persons known and unknown to the grand

1   jury to knowingly and intentionally distribute and possess

2   with intent to distribute a quantity of methamphetamine, its

3   salts, isomers, and salts of its isomers in excess of 50

4   grams, and to distribute and possess with intent to distribute

5   a quantity of cocaine in excess of 500 grams, both Schedule II

6   controlled substances, in violation of Title 21, United States

7   Code, Section 841(a)(1).

8       And the overt acts in furtherance of the conspiracy

9   to effect the objectives of the conspiracy, the defendants

10  performed overt acts in the District of Hawaii and elsewhere,

11  including but not limited to:

12       One, during February 2001 the defendants Michael

13  Minton and Robin Webster Minton rented Public Storage lockers

14  in Waipahu, Hawaii.

15       Two, during March 2001, the defendant Robin Webster

16  Minton drew a check on the Hawaii USA Federal Credit Union in

17  the amount of $610.

18       Three, during 2002 the defendant Robert R. Maldonado,

19  Jr. and Ryan Sonognini distributed quantities of cocaine on

20  the island of Oahu.

21       Four, on or about May 4th, 2002, defendant Ryan

22  Kawika Sonognini rented a Public Storage lock location in

23  Waipahu -- a Public Storage location in Waipahu, Hawaii.

24       Five, on or about June 19th, 2002, in the Honolulu

25  International Airport defendant Michael Minton attempted to

1    board a Hawaiian Airlines flight to California with $232,807

2    in U.S. currency.

3    On or about July 22nd, 2002, the defendant Michael

4    Minton, Robin Webster Minton and Ryan Sonognini stored a

5    quantity of cocaine in excess of 500 grams in a Public Storage

6    locker in Waipahu, Hawaii.

7    Seven, on or about July 25th, 2002, the defendant

8    Robin Webster Minton and Robert R. Maldonado, Jr. stored a

9    quantity of methamphetamine in excess of 50 grams and a

10    quantity of cocaine in excess of 500 grams in a room at the

11    Hawaii Prince Hotel in Honolulu, Hawaii, all in violation of

12    Title 21, United States Code, Section 846.

13    You understand that charge?

14    THE DEFENDANT:  Yes, ma'am.

15    THE COURT:  You understand that for Count 1, the

16    maximum possible sentence you can receive is up to life, a

17    fine of up to $4 million, a term of supervised release of not

18    less than five years and up to life?

19    THE DEFENDANT:  Yes, ma'am.

20    THE COURT:  And there is a $100 special assessment?

21    (Counsel and client conferring.)

22    THE DEFENDANT:  Yes, ma'am.

23    THE COURT:  And that there is a minimum term of

24    imprisonment of ten years as to Count 1?

25    THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  You understand that if you are sentenced

2     to prison and released on terms of supervised release, you can

3     be given additional time in prison if a judge finds you have

4     violated the conditions of supervised release?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  The court finds the defendant understands

7     the nature of the charge to which the plea is being entered,

8     the mandatory minimum penalty of ten years and the maximum

9     possible penalties provided by law.

10         Now, Mr. Maldonado, has anybody threatened you or

11    anyone else or forced you in any way to plead guilty?

12         THE DEFENDANT:  No, ma'am.

13         THE COURT:  Have you entered into a plea agreement

14    between you and your attorney and the government?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Okay.  At this time I'm going to ask Mr.

17    Muehleck to state the essential terms of the plea agreement.

18         MR. MUEHLECK:  The plea agreement between the

19    defendant and United States requires Mr. Maldonado to plead

20    guilty to Count 1 of the first superseding indictment, Your

21    Honor.  He's also required to cooperate.  This is a

22    cooperation plea agreement.  He's required to be debriefed or

23    to submit to debriefings by federal agents, to be truthful,

24    candid, and complete in his responses, and of course waive his

25    Fifth Amendment rights to remain silent during those

1   debriefings.

2         He also agrees to testify for the United States if

3   called as a witness before the grand jury and at a trial

4   against co-defendants or whoever, and to be truthful and

5   cooperative and complete and waive his Fifth Amendment rights

6   then also.

7         He's also required to waive his rights under Title

8   18, United States Code, Section 3742, that is his appellate

9   rights, his right to challenge the sentence, he gives up that

10  right.  He also gives up his right to collaterally attack the

11  sentence under Title 28, United States Code, Section 2255 and

12  basically gives up his right to challenge his sentence in any

13  way it's computed.

14        He does retain the right to challenge his sentence

15  for, one, ineffective assistance of counsel, or two, if the

16  court departs above the guideline range at sentencing, as

17  departure is defined by United States Sentencing Commission

18  guidelines manual, he retains the right to appeal the sentence

19  then or challenge the sentence.

20        In all other respects the defendant gives up his

21  right to challenge his sentence.  Defendant understands that

22  United States retains its right to challenge the sentence or

23  appeal the sentence.

24        The defendant understands that the United States will

25  evaluate his cooperation at the end of the period of

1    cooperation, and may, but is not required to, file a motion

2    under 3553(e) of Title 18, that is a motion to depart from the

3    mandatory minimum sentence based upon substantial assistance

4    with law enforcement authorities.

5          The defendant understands he has no right to expect

6    such a motion, that there has been no promise that such a

7    motion will be made.  He further understands he has no

8    contractual right to such a motion.  He understands it's fully

9    within the discretion, the total discretion of the United

10   States Attorney's Office whether to make such a motion to

11   depart for substantial assistance.

12         He further understands that even if the United States

13   Attorney's Office makes such a motion, Your Honor, it's within

14   the total discretion of the court whether to honor it or grant

15   it in some part or not at all.

16         The defendant also understands that he gives up his

17   right, as the court has already told him, to have a jury

18   determination as to the type of drugs and the amount of drugs

19   charged in the first superseding indictment.

20         I think those are the basic provisions, Your Honor.

21         THE COURT:  Thank you, Mr. Muehleck.

22         Now, Mr. Barbee, you have heard what Mr. Muehleck

23   says.  Is there anything that you would like to add or modify

24   with respect to the essential terms of the plea agreement?

25         MR. BARBEE:  I'm not sure if I heard Mr. Muehleck say

1    that in exchange for the plea to Count 1, the government would

2    be dismissing --

3          MR. MUEHLECK:  Yes.

4          MR. BARBEE:  -- all additional counts as to

5    Mr. Maldonado's sentencing.

6          MR. MUEHLECK:  Yes, as part of -- as part of the plea

7    agreement, in exchange for his cooperation and plea and

8    waivers, we agree to dismiss the remaining counts in the

9    indictment at sentencing.  And that's a written provision of

10   the plea agreement.  I forgot.  Thank you, Judge.  Thank you,

11   Mr. Barbee.

12         THE COURT:  Okay.  And is that, with that addition, a

13   complete recitation, an accurate recitation of the essential

14   terms of the plea agreement?

15         MR. BARBEE:  Yes, Your Honor.

16         THE COURT:  Now, have you discussed the plea

17   agreement with Mr. Maldonado?

18         MR. BARBEE:  I have, Your Honor.

19         THE COURT:  Do you believe he understands it?

20         MR. BARBEE:  He does.  We've had several

21   conversations in length about the plea agreement.  He's asked

22   intelligent questions about the plea agreement and I believe

23   he fully understands the plea agreement.

24         THE COURT:  And are you in agreement with its terms?

25         MR. BARBEE:  Yes, Your Honor, I am.

1          THE COURT:   Thank you.

2          Now, Mr. Maldonado, have you read the plea agreement?

3          THE DEFENDANT:   Yes.

4          THE COURT:   Have you discussed it with Mr. Barbee?

5          THE DEFENDANT:   Yes, ma'am.

6          THE COURT:   Has he answered all your questions?

7          THE DEFENDANT:   Yes, ma'am.

8          THE COURT:   Are you in agreement with its terms?

9          THE DEFENDANT:   Yes, ma'am.

10         THE COURT:   And you agree that what Mr. Muehleck has

11    said and with the additional what Mr. Barbee said is the

12    correct statement of what's in the plea agreement?

13         THE DEFENDANT:   Yes, ma'am.

14         THE COURT:   Okay.  Thank you.

15         Mr. Barbee, if you would identify your signature and

16    assist your client in identifying his?

17         MR. BARBEE:   Yes, Your Honor.  I'm looking at Page 12

18    of what's titled the Original Memorandum of Plea Agreement in

19    Mr. Maldonado's case and I recognize my signature, which I put

20    there just this afternoon.  I also recognize Mr. Maldonado's

21    signature on Page 12.

22         THE DEFENDANT:   Yes, that's my signature, ma'am.

23         THE COURT:   Okay.  Thank you.

24         Mr. Muehleck?

25         MR. MUEHLECK:   Yeah, I recognize Florence Nakakuni's

1    signature, she's the Assistant U.S. Attorney, chief of the

2    narcotics section of the U.S. Attorney's Office, and my

3    signature, Judge.

4            THE COURT:  Thank you.

5            At this time, Mr. Barbee, if you'd provide it to Ms.

6    Sai, we'll make it part of the record.

7            Now, Mr. Maldonado, has anybody attempted in any way

8    to force you to plead guilty?

9            THE DEFENDANT:  No, ma'am.

10           THE COURT:  Are you pleading guilty of your own free

11   will because you are guilty?

12           THE DEFENDANT:  Yes, ma'am.

13           THE COURT:  Do you understand that any agreement by

14   your attorney and the attorney for the government to recommend

15   a particular sentence to the court doesn't bind the court?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  You understand on the basis of your

18   guilty plea you can receive up to the maximum term permitted?

19           THE DEFENDANT:  Yes, ma'am.

20           THE COURT:  Do you understand that I'm not required

21   to accept the plea agreement and I may reject it?

22           THE DEFENDANT:  Yes, ma'am.

23           THE COURT:  Has anybody made any prediction, prophecy

24   or promise to you as to what your sentence will be?

25           THE DEFENDANT:  No, ma'am.

1          THE COURT:  I'm sure that you've discussed sentencing

2     with Mr. Barbee, and he's an experienced attorney, but I do

3     want to point out to you that it is up to the judge what

4     sentence you will receive.

5          THE DEFENDANT:  Yes, ma'am, that's been made quite

6     clear to me.

7          THE COURT:  I want to be sure that you in fact

8     committed the crimes of which you have been accused and to

9     which you are prepared to plead guilty.  So I'm going to ask

10    Mr. Muehleck to state the elements of Count 1 and the evidence

11    the government would be prepared to put forward with respect

12    to Count 1 at trial.

13         MR. MUEHLECK:  As to Count 1, the elements, Your

14    Honor, the elements would be that the defendant voluntarily

15    entered into an agreement with at least one of those persons

16    charged in Count 1 to violate the law, that is he agreed to

17    possess with intent to distribute or to distribute more than

18    500 grams of cocaine and more than 50 grams of

19    methamphetamine, its salts, isomers, and salts of its isomers.

20         And secondly, that his intent was to -- or his intent

21    or desire was that the actual possession with intent to

22    distribute or distribution of more than 500 grams of cocaine,

23    more than 50 grams of methamphetamine, its salts, isomers, or

24    salts of its isomers actually take place, that is be

25    accomplished.  Those would be the elements.

1          As to the factual basis, Your Honor, we would show

2     that in June of 2002, an associate of Mr. Maldonado, that is

3     Robert Minton, was stopped at the airport, I believe on

4     July -- June 19th of 2002.  He was found to be carrying

5     $232,807 in U.S. currency in two briefcases.  He was outbound

6     on a Hawaiian flight to -- or was about to board a Hawaiian

7     Airlines flight to Los Angeles.  A search warrant was obtained

8     for the suitcases.  A narcotics detection dog from HPD -- the

9     suitcases were opened and the currency was found.  A narcotics

10    detection dog from HPD sniffed the money, alerted to

11    contaminants on the money, which the handler tells us is --

12    would have been cocaine or heroin or marijuana or a controlled

13    substance.

14          The -- that Mr. Minton was very nervous and left the

15    scene, leaving the bags in the custody of a DEA task force

16    agent prior to the search warrant.  That the DEA did a work-up

17    of the case on Mr. Minton, criminal history and intelligence

18    information.  Obtained a warrant for Mr. Minton's Hauula

19    residence up in -- the hills up in what they call Grass

20    Valley.  And on July 22nd, 2002, that task force agent and

21    other officers executed that warrant and found a quantity

22    of -- found evidence that Mr. Minton and Robin Minton and Ryan

23    Sonognini had storage lockers at a Waipahu Public Storage area

24    and those lockers were searched.  And approximately 3,988

25    grams of cocaine was found.

1          And the United States would show that during 2001 and

2    part of 2002 the defendant resided on Oahu and was an

3    associate of Mr. Michael Minton and Robin Webster Minton.    The

4    defendant was aware that Michael Minton obtained quantities of

5    methamphetamine in excess of 50 grams which Michael Minton and

6    Robin Minton had and which Michael Minton distributed on Oahu.

7          Defendant was also aware that Michael Minton would

8    obtain pound quantities of cocaine from California which

9    Michael Minton and Robin Minton sold in small quantities.    On

10   July 22nd, as I said, of 2002, searched the storage locker in

11   Waipahu utilized by Michael Minton and seized the compound

12   that was analyzed by the DEA laboratory in National City,

13   California and found it to be 3,988 grams net weight of a

14   substance that was 88 percent pure cocaine hydrochloride, a

15   Schedule II controlled substance.

16         On July 25th, 2002, HPD officers were called to the

17   Hawaii Prince Hotel and they determined that the defendant and

18   Robin W. Minton possessed a quantity of cocaine in excess of

19   50 grams and a quantity of methamphetamine in excess of 50

20   grams in a hotel room at the Hawaii Prince Hotel which the

21   defendant and Robin Minton intended to distribute.

22         Be cooperating individuals in this case, there would

23   be testimony of agents from the DEA, laboratory analysis and

24   witnesses from the laboratory, and testimony from HPD officers

25   as to what was found.

1    Generally that would be the case if we went to trial,
2    Your Honor.

3    THE COURT:  Thank you.

4    Now, please tell me in your own words, Mr. Maldonado,
5    what you did that makes you guilty of the charge in Count 1.

6    THE DEFENDANT:  I for myself was -- got introduced to
7    Michael and Robin Minton through a friend.  And by getting to
8    know them, I started to sell dope for them, which is -- I was
9    aware, started dropping off packages to certain people for
10   them.  And then I was called up by Robin Minton to meet her at
11   the Prince Hotel and to bring a bag that I had at my -- at my
12   place where I was staying from her husband Mike.  That being
13   that they got raided a few days before that in Punaluu, I
14   still had this bag.  So I went there to give it to her because
15   she told me that Mike wanted her to have the bag, you know,
16   which contained the cocaine and methamphetamine and which I
17   offered to actually distribute it for them, being if I could
18   help them out for funds to get a lawyer or whatever, being
19   that they got raided and stuff, you know.

20   But, you know, I was delivering packages for them
21   previously on a few occasions.  So, you know, I did my -- my
22   own part in -- in this small ring of people.

23   THE COURT:  Now, so you were working with Michael
24   Minton and Robin Webster Minton?

25   THE DEFENDANT:  Yes.

1           THE COURT:   To accomplish the distribution of the

2    drugs?

3           THE DEFENDANT:   Yes, ma'am.

4           THE COURT:   That was your agreement?

5           THE DEFENDANT:   Yes, ma'am.

6           THE COURT:   And the period of time, what period of

7    time was it?

8           THE DEFENDANT:   I would have to say, I actually met

9    them in about the very beginning part of 2002, say about

10   January until up to the present, what -- what took place of

11   July.

12          THE COURT:   So between January 2002 and July 2002,

13   during that period?

14          THE DEFENDANT:   Yes.

15          THE COURT:   Okay.  And where did you do these things?

16   Where did you get the drugs and deliver them, what location?

17          THE DEFENDANT:   A friend of mine took me down to --

18   to Michael's house in Punaluu and I met him and he decided to

19   put some quantities in my hands if I could drop it off at

20   certain places, which they had a black book of, like, in a

21   roundabout way, certain names, which I didn't know the people

22   at that time.  But I went and delivered it to get that pocket

23   cash for my own benefits and that escalated to a little bit

24   more of me carrying a little bit more and more quantity-wise

25   to drop off to here or there and -- or book flights for him to

1    the Mainland or -- and so forth.  And that kind -- that's how

2    I knew him for the about four or five months, ma'am.

3              THE COURT:  Okay.  And that was all on Oahu in

4    Hawaii?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  And the charge says more than 500 grams

7    of cocaine.

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Is that right?

10             THE DEFENDANT:  Yes.  What I took to the hotel room,

11   it was about almost a kilo, I believe, somewhere around there.

12   So yeah, I would have to say that's much more than 500 grams,

13   ma'am.

14             THE COURT:  Okay.  And what about the

15   methamphetamine?

16             THE DEFENDANT:  Well, it was kind of close to a pound

17   maybe, but I can't really recall that much, but it was pretty

18   substantial.

19             MR. BARBEE:  More than 50 grams?

20             THE DEFENDANT:  More than 50 grams, ma'am.

21             THE COURT:  Okay.  So your belief is that the purity

22   and the amount of the methamphetamine was in excess of 50

23   grams?

24             THE DEFENDANT:  I really can't contest that, but I

25   agree with the DEA lab report, ma'am.

1          THE COURT:  Okay.  There was a report on that 50

2     grams?

3          MR. MUEHLECK:  Yes, more than 50 grams of pure.  It

4     wasn't -- the whole amount certainly was not pure, but the

5     laboratory analysis showed that the total drug if reduced to

6     pure drugs was more than 50 grams, yes, Your Honor.

7          THE COURT:  Okay.  And you agree with that,

8     Mr. Maldonado?

9          THE DEFENDANT:  Yes.  Yes, ma'am.

10          THE COURT:  Okay.  And you're willing to waive having

11     those amounts determined by a jury?

12          THE DEFENDANT:  Yes.  Yes, ma'am.

13          THE COURT:  Okay.  Are you satisfied, Mr. Muehleck?

14          MR. MUEHLECK:  Yes, Your Honor.  Thank you.

15          THE COURT:  Okay.  The court finds that based upon

16     the statements made by the defendant under oath to this court,

17     there is a factual basis upon which the defendant may enter

18     his plea.

19          How do you plead to Count 1, guilty or not guilty?

20          THE DEFENDANT:  Guilty, ma'am.

21          THE COURT:  Since you acknowledge that you are in

22     fact guilty as charged and since you know of your right to a

23     trial and what the maximum possible punishment is and since

24     you are voluntarily pleading guilty, the court at this time

25     files the plea agreement but reserves a determination of

1    whether to accept the plea agreement until after an

2    investigation and a presentence report had been prepared.

3         It's the finding of the court in the case of United

4    States versus Maldonado that the defendant is fully competent

5    and capable of entering an informed plea and that his plea of

6    guilty is a knowing and voluntary plea supported by an

7    independent basis in fact containing each of the essential

8    elements of the offense and his plea is now accepted and he's

9    now adjudged guilty of the offense.

10         Mr. Maldonado, you're referred to the probation

11    office for a presentence investigation report.  I ask you to

12    cooperate with them, it will help at sentencing.  And

13    Mr. Barbee may be with you when you speak with them.

14         Mr. Barbee, if you haven't already done so, following

15    this would you make an appointment?

16         MR. BARBEE:  Yes, Your Honor.

17         THE COURT:  Thank you.  And may we have a sentencing

18    date, please?

19         THE CLERK:  September 20th, 2004, at 2:15 p.m.

20         MR. MUEHLECK:  20 September, 2:15 p.m.

21         MR. BARBEE:  Your Honor, with regard to the

22    sentencing date, Mr. Maldonado has been in custody almost, I

23    think, 18 or so months here.  He very early on telegraphed his

24    intention to enter into a plea agreement and cooperated

25    against co-defendants.  He's addressed this request before

```
 1    with magistrate -- with the magistrate judges --
 2              THE COURT:  That's not to happen here on the same
 3    day.
 4              MR. BARBEE:  Well, Your Honor, he really would like
 5    to get out of the Federal Detention Center as soon as possible
 6    because he's been held in that pretrial condition.  He'd like
 7    an earlier sentencing date if at all possible, at the earliest
 8    possible because he's really not comfortable at the Federal
 9    Detention Center.
10              THE COURT:  Okay.  Tell me, Ms. Sai, is that the --
11    is that the 14 weeks?
12              THE CLERK:  No, it's not, Your Honor.  The 14 weeks
13    would bring us up to like August 16th.  May I just check your
14    calendar to see?
15              THE COURT:  Yeah, look like the week before that.
16              THE CLERK:  Okay.  Thank you, Your Honor.
17              THE COURT:  What about the 15th, do I have any
18    vacancies on Thursday the 15th?
19              THE CLERK:  The 16th is a Monday, Your Honor, and
20    that would be the 14th week.
21              THE COURT:  Oh, I'm sorry, I'm looking at the wrong
22    calendar.  Okay.  I'm -- is Admission's Day the 19th?  Do we
23    take it on the 19th even if it's -- we just take Admission's
24    Day on the actual day rather than on Friday?
25              Okay.  Hang on.
```

1              (Pause in the proceedings.)

2              (Court and clerk conferring.)

3        THE COURT:  Why don't we schedule it for 1:30 on the

4    20th, if that's okay with everybody.  That's a Friday.  20th

5    of August, 1:30.  Is that okay, Mr. Barbee?

6        MR. BARBEE:  Yes, Your Honor.  Mr. Maldonado really

7    appreciates it.  He's been at the FDC for many, many months.

8        THE COURT:  Okay.  I just hope the probation officer

9    doesn't have a problem with it.  One reason to get an early

10   appointment to get going on that.

11       MR. BARBEE:  Yes, Your Honor.

12       THE COURT:  And hearing no motions to the contrary,

13   the current orders with respect to custody remain in effect.

14       Anything else that we need to do?

15       MR. MUEHLECK:  Not from the United States.  Thank

16   you, Your Honor.

17       MR. BARBEE:  No, Your Honor.

18       THE COURT:  Okay.  Thank you.  We stand in recess.

19       THE DEFENDANT:  Thank you, ma'am.

20       (The proceedings concluded at 4:15 p.m., May 7,

21   2004.)

22

23

24

25

1        COURT REPORTER'S CERTIFICATE

2            I, CYNTHIA TANDO FAZIO, Official Court Reporter,

3    United States District Court, District of Hawaii, Honolulu,

4    Hawaii, do hereby certify that the foregoing pages numbered 1

5    through 29 is a correct transcript of the proceedings had in

6    connection with the above-entitled matter.

7

8            DATED at Honolulu, Hawaii, Decemnber 3, 2004.

9

10

11                    CYNTHIA TANDO FAZIO, RMR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25